Good morning, Your Honors. May it please the Court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Mr. Villagrana. This was a case of reasonable doubt, and in a case of reasonable doubt, defense counsel here unreasonably failed to interview or call three witnesses who well could have tipped the balance. His failure to do so violated Mr. Villagrana's Sixth Amendment right to the effective assistance of counsel and requires that the writ be granted. Now, at the outset, I think it's important to remember that this case is so old, and it was filed before the effective date of the ADPA. Being that, that means that, of course, that a review here is a no-go. There's no deference to any state court decision. In fact, there wasn't any state court decision on the merits, any reason state court decision in this case anyway. So this is a pure Strickland case. Under Strickland, relief is merited where you can show deficient performance and prejudice. Both are shown here. GINSBURG Counsel knew what the witnesses had told the police through the murder book. And assuming he didn't talk to them, or assuming his investigator didn't talk to them, we know what at least one of them definitely would have said, because he testified at the evidentiary hearing. So the real question, it seems to me, is what difference it makes that he didn't actually interview them himself before the trial, because at most they would have said that there was also a red car seen in the alley. And that doesn't mean there wasn't a blue one. No, it doesn't, Your Honor. But the point being that this was a case of reasonable doubt. So anything that you can add to that calculus, that detracts from the prosecution's case, and this was a big one. Well, if it was a red-branched and pink polka-dotted car, I mean, what difference does it make? If there's testimony that there was a blue truck, what difference does it make that there were a zillion other vehicles in the alley at the time? The difference is that the blue truck, according to some of the prosecution witnesses, was following the victim into the alley and shooting him, killing him. That was essentially one of their theories. Now, Mr. Suarez, one of the witnesses he didn't call – Well, these witnesses would not have testified that there was no blue truck in the alley. They would have testified that they saw Mr. Cuevas run into the alley and he wasn't being followed by any blue truck, which would suggest strongly that the testimony that there was this blue truck following him, shooting at him in the alley was totally false. That was very important stuff. Counsel, why don't you tell us exactly what the prosecution evidence was, and then we'll know whether this other would have cast a reasonable doubt in the jurors' minds. Well, the prosecution evidence with respect to the blue truck was that Mr. Herrera or Mr. Lara purportedly saw our client, my client, in a blue truck following Mr. Cuevas. That was the only direct testimony of the shooting. All the rest of it was circumstantial. Now, did they later withdraw their testimony or say that they didn't say what they said? Yes. The witness denied making that statement to the other man who reported to the police. That was actually double hearsay. But nonetheless, the prosecutor put on that statement and then went to great lengths to corroborate it by showing that after the statement, these three people went looking for a blue truck. The only important thing could have been that they thought a blue truck was involved in the shooting. Now, there was evidence that the defendant went to Tijuana and called back to see what was going on? That's correct, Your Honor. That evidence obviously added to the prosecution's case, but certainly wasn't determinative. That by alone certainly was not enough to establish this case beyond a reasonable doubt. And there's plenty of problems with that case. The witness that they said they relied on was admittedly drunk during testimony. He disavowed everything he said to the police later. He said he was drunk at the time. This was not the kind of witness that you want to rest a case on, which was probably why the prosecutor felt compelled to bolster it with this other statement about the blue truck shooting, the shooting from the blue truck. So in those circumstances For the jury, and the jury also, he did tell the police right away that he came in and said someone had just swiped his truck and he asked for a gun and came back 15 minutes later and said something to the general effect of, well, that's done. Which seems to me to be fairly powerful evidence. It would be powerful evidence, except there were a lot of problems with that evidence, mainly that he disavowed that statement. He said he was drunk at the time he did it. And plus, you look at the timing, and it's very odd. I mean, he apparently has like 15 minutes to go find a gun, because he didn't have a gun if Mr. Camarena didn't give him the gun, find the victim, shoot the victim, come back, dispose of the gun, and according to the prosecution's case, also find some red truck to ride around in to do the shooting. It was very problematic. There was the, but this court can't resolve this case solely with reference to the prosecution, this prosecution's case. And I think Rios versus Roca, which I think is a problematic example of that. In that case, there was evidence that there had been a confrontation. The victim had actually punched the defendant in the face, causing him to bleed, tried to kick his window in. The guy went home, picked up a gun. There were three women in his car, all testified at trial that he came back and shot this guy. And this court nonetheless reversed and granted the writ, because there was witnesses who may have made a difference, obviously, that weren't called witnesses that someone else had shot him. Even that, even that testimony was inconsistent. But the fact remained that there were, there was important evidence that could have been presented to the jury that wasn't. And this case was not ironclad. This case is not a case where there were eyewitnesses. There's certainly some circumstantial evidence of guilt. And we're not arguing that the evidence was insufficient. But given that the prosecutor bolstered this, this circumstantial evidence, this direct evidence of the shooting, and that this evidence, the witnesses who the defense lawyer didn't call, could have pretty much destroyed that part of the case, then Mr. Villagrana deserves a trial at which all the evidence comes out. I'll reserve the remainder of my time for the rest. Good morning, Your Honor. May it please the Court. Deputy Attorney General Jeffrey Kahn on behalf of Respondent. Your Honors, I would begin by respectfully disagreeing with counsel's statement that there is no deference owed in this case. Under Strickland there is clearly deference owed to Mr. Yar's decisions. And counsel has here taken an attack which contradicts the letter of Strickland, which announces that there is more than one way. In fact, there are myriad ways to provide effective assistance of counsel. Here, Mr. Villagrana would have this Court announce essentially a rule that wherever there was any possible evidence that might cast some doubt on a prosecution case, it must be adduced. Well, counsel, you had evidence from one witness that the blue truck followed them down an alley. It's true. Now was there evidence as to where that blue truck was parked and that it stayed parked? I don't know that there was ever any evidence as to the specific movements of the blue truck other than that it had followed Mr. Cuevas into the alley. But I think that points up the problems of the putative testimony we're talking about here, particularly when it's put together. Mr. Chacon at the evidentiary hearing explained that after the shooting he heard tires squeal. Now he also explained that at the west end of the alley where the red truck was seen, there was no pavement. It was dirt. So presumably the tires that were squealing he heard on the pavement on the east end of the alley where the body was found. Now over on the west end of the alley is the red truck. The police reports and even the statement of facts recount the fact that the body was found 140 feet from the mouth of the alley. It makes no sense that this man was shot four times at 140 feet away with a .32 caliber weapon. Was the weapon ever found? No. But when you put all of this evidence together, it becomes self-defeating. And this was what Mr. Yar was attempting to avoid. And that's exactly what he testified to. He said that he was attempting to put on the strongest possible case. And in fact, in his argument to the jury, his tack was to attack the strongest parts of the prosecution case. And it was his perception that the strongest evidence they presented was actually the testimony of Natalia Camarena, not because he was consistent with his statements to the police, but because he was inconsistent with those statements. And in Mr. Yar's perception, was attempting to cover for the common law husband of his daughter. And Mr. Yar felt that if he could not attack that, that all was lost. And so clearly his strategy was... When Mr. Viagrano was interviewed, the father-in-law, did he inform the police that he'd been drinking at the time? I don't think that's reflected in the statements. The first couple of interviews, he was interviewed three times, I think. Yeah. When was it that he later changed his testimony and said that actually he was under the influence? There is some statements in the beginning of the trial, just prior to the trial beginning, where I believe the prosecutor was asking for an order regarding Mr. Viagrano because he was becoming problematic. So I don't think that he flipped until the time of trial, or around the time of trial. And all that was explored before the jury? It was explored, including the question of whether or not he appeared to be under the influence of alcohol during the interviews. I think even putting all that aside, and I think most of this goes to the second prong of Strickland, with regard to Suarez and Tapia, it's never been shown that And, in fact, quite the opposite appears to be true. Notwithstanding the efforts of my office and Mr. Viagrano's counsel, these people could not be located for purposes of service. Apparently they were not interviewed by the defendant's counsel or his investigator. Is that correct? Well, I think it's unclear whether or not either of them was interviewed. Mr. Sanchez, the investigator at the time, had died by the time of this evidentiary hearing, and his files were lost. Now, the magistrate judge declined essentially to find whether or not these men had been interviewed. It was clear that Mr. Yar had not personally interviewed them. It is possible that they were interviewed, and the magistrate judge did note that Mr. Yar seemed to recall having uncovered certain extra contradictions in their statements. So it's particularly unclear. Now, Mr. Chacon, we know, was not interviewed, but Mr. Yar explained that he believed that the statement Mr. Chacon had related to the police, the No Te Dejas Emilio statement, just made no sense to him. He didn't think that it was the sort of statement a person would make to an armed man, and it wasn't the sort of statement he wanted to rely on. And that is a perfectly appropriate tactical decision by an attorney. Well, there was inconsistency as to what the translation should be from the Spanish. One police officer said that it was one thing, and another said it was another in their report. Right. So you would think that he would have interviewed him and tried to straighten that out. But Yar was aware that the, which of those two officers spoke Spanish, and he credited Detective Guzman, whom he knew to be a Spanish speaker. Without talking with the witness. So far as, yes, that's correct. Yeah, no, I mean, that's true. He did not talk to Chacon. But again, he was aware of the statement that Chacon had related, and he did not find it to be a credible response. And frankly, given Chacon's opportunity to perceive what was going on, that was a sensible determination. Because had he presented Chacon, he would have ultimately presented a witness who not only saw nothing, but could not have seen anything. He simply was not in a position to see this crime committed. And even if he heard precisely those words spoken, he couldn't say who spoke them and in what circumstances. I mean, this was an alley backed up against a lot of residential space. But it did bring in an additional player, perhaps, in Emilio. Perhaps. But again, Mr. Yar did not want to bring in a witness who was going to draw attention to him or herself. And the evidence of that can be seen in the witnesses he did choose. I mean, he put on two police detectives, and he put on the manager of the apartment building. He was obviously trying to choose witnesses that he did not think would draw a lot of attention to the credibility of his case, because he knew that his strategy was going to be to attack the credibility of the prosecution's case. Unless the Court has any further questions, I'm afraid it's a minute. I don't think that we do have. Thank you. Thank you.  Thank you, Your Honor. This was a case where there was some evidence presented by Mr. Camarena and there was other evidence presented by Mr. Lara's statements. Perhaps Mr. Camarena's evidence was more important, but Mr. Lara's evidence was still important, and he did not use what he could to refute that. Now, there was also problems with this case in that there was no physical evidence. They found no weapon. There was no fingerprints, no DNA, nothing that a jury could grab onto. So they would have to do it based on Mr. Camarena's statement, which I would say was problematic. In that case, we're talking about a classic case of reasonable doubt. In a classic case of reasonable doubt, any competent defense lawyer, Mr. Lasting's testified to this, uses every available tool. And we're not talking about minor inconsistencies or something. We're talking about evidence that directly refuted a very strong part, a very important part of the prosecution's case. That is, these people saw Mr. Cuevas run into the alley. They were right at the mouth of the alley. They did not see Mr. D'Agrana following them in any blue truck, shooting at him. End of story. That should have been presented. That was failed to be presented, and the jury never heard that. It means that Mr. D'Agrana never got his constitutional life effective assistance of counsel. The Constitution guarantees that, as far as the writ be granted. Thank you, counsel. The matter just argued will be submitted. We'll next hear argument in Rivera. Thank you.
judges: B. Fletcher, Rymer, Paez